FILED DEC 4 '25 AM10:11 USBC-GBO

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION
AP CASE # 25-02009

| | |
|---|---|
| JAMES LAWRENCE BRYANT, JR. and SHARON RENEA BRYANT a/k/a <br><br> Plaintiffs | COUNTERCLAIMS OF DEFENDANTS |

## TABLE OF CONTENTS

I. Introduction

II. Parties

III. Jurisdiction and Venue

IV. Factual Background

V. Causes of Action

VI. Damages

VII. Prayer for Relief

VIII. Signature

## I. INTRODUCTION

1. Defendants/Counterclaim-Plaintiffs James L. Bryant Jr. and Sharon R. Bryant ("the Bryants") assert these Counterclaims against Eastwood Construction Partners, LLC, and against Clark Stewart (Chief Executive Officer of Eastwood Construction d/b/a Eastwood Homes), attorney Jamie Lowdermilk, attorney Katie Wong, attorney Clint Morse, attorney James Adams II, and General Counsel Allen Nason, each sued in their personal and official capacities. The Counterclaims arise out of a continuous course of discriminatory conduct, retaliatory actions, abuse of judicial process, breach of contract, misuse of confidential information, and violations of federal bankruptcy protections.

2. The Bryants file this pleading to fully present the pattern of misconduct perpetrated by Eastwood and its representatives, detailing a multi-year sequence of wrongful acts beginning with the construction of their home, escalating through discriminatory and retaliatory responses to protected civil rights complaints, and culminating in severe litigation misconduct across state court actions, agency proceedings, and the bankruptcy forum.

3. This pleading is organized into comprehensive sections to set forth, in clear detail, the nature of the wrongdoing, the individuals involved, the statutory frameworks violated, and the resulting damages incurred. Each section provides factual amplification to ensure the Court may readily evaluate the seriousness and breadth of Eastwood's actions.

## II. PARTIES

4. Counterclaim-Plaintiff James L. Bryant Jr. is a resident of Trinity, North Carolina. He is African American and, at all relevant times, was a consumer relying on truthful representations from Eastwood regarding the construction of his home and the fair treatment he was entitled to receive as a homeowner and as a customer raising legitimate concerns.

5. Counterclaim-Plaintiff Sharon R. Bryant is also African American and jointly participated in the purchase and oversight of the home. She likewise suffered harm from Eastwood's discriminatory, retaliatory, and abusive actions.

6. Counterclaim-Defendant Eastwood Construction Partners, LLC, doing business as Eastwood Homes, is a corporation engaged in residential construction and sales. Eastwood held itself out as a reputable builder but engaged in practices far outside industry standards.

7. Individual Counterclaim-Defendant Clark Stewart, as CEO, exercised authority and oversight over Eastwood operations and is responsible for ratifying company decisions, including litigation and settlement strategy. His approval and supervision materially contributed to the wrongful conduct alleged herein.

8. Individual Counterclaim-Defendants Jamie Lowdermilk, Katie Wong, Clint Morse, and James Adams II are attorneys who acted not merely as advocates but as active participants in discriminatory, retaliatory, and abusive practices described herein. Their conduct exceeded the bounds of lawful advocacy and included misuse of confidential materials, pursuit of improper discovery, filing of retaliatory motions, and actions taken in bad faith efforts to intimidate, burden, or punish the Bryants.

9. Individual Counterclaim-Defendant Allen Nason, General Counsel for Eastwood, directly participated in decisions involving the disclosure of confidential settlement terms, strategic litigation retaliation, and misuse of legal process. His involvement demonstrates corporate endorsement of the retaliatory conduct.

## III. JURISDICTION AND VENUE

10. The Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334, as this Counterclaim concerns matters arising in and related to the underlying bankruptcy case and adversary proceeding initiated by Eastwood.

11. Venue is proper because the events giving rise to these claims occurred within this District, and Eastwood initiated litigation in this forum.

12. Supplemental jurisdiction exists for related state-law claims, including breach of settlement, breach of confidentiality, unfair and deceptive trade practices, abuse of process, fraud, and intentional infliction of emotional distress.

## IV. FACTUAL BACKGROUND

13. The Bryants purchased a home from Eastwood believing they would receive professional craftsmanship and honest dealings. Their experience proved far different from what Eastwood publicly represents.

14. When the Bryants identified defective workmanship and environmental concerns, they exercised their lawful right to submit complaints to agencies including the North Carolina Real Estate Commission, the North Carolina Department of Environmental Quality, the North Carolina Attorney General, the Randolph County NAACP, and the Better Business Bureau.

15. These complaints were protected activities and, in the case of the Real Estate Commission and NAACP filings, explicitly included grievances of racial discrimination and unequal treatment when compared to white customers who raised similar issues.

16. Rather than addressing concerns in good faith, Eastwood retaliated by filing a lawsuit, obtaining a Temporary Restraining Order, securing a preliminary injunction, and attempting to pursue contempt against the Bryants. This conduct escalated the situation dramatically and demonstrated an intent to silence and intimidate the family rather than resolve the underlying issues.

17. A Settlement Agreement was reached on December 28, 2023. As part of that Agreement, Eastwood required the Bryants to dismiss all pending claims first before Eastwood dismissed its own claims. This unilateral structure placed the Bryants at risk and set the stage for further abuse.

18. Eastwood materially breached the Settlement Agreement by publicly filing confidential settlement terms, the monetary consideration paid, and the Confession of Judgment document. These disclosures were intentional and designed to shed negative light on the Bryants while gaining strategic leverage in future proceedings.

19. After filing for bankruptcy, the Bryants received a discharge on September 4, 2025. Astonishingly, Eastwood filed a Motion to Show Cause on September 5, 2025—one day following discharge—an unmistakable act of retaliation and disregard for bankruptcy protections.

20. Eastwood then misused Rule 2004 to obtain highly sensitive financial documents, including bank statements, tax returns, and personal identifying information. These documents were later weaponized in litigation arguments and inappropriately referenced in court hearings.

21. On November 10, 2025, Judge Benjamin A. Kahn issued an order staying the Rule 2004 examination and identifying serious concerns with Eastwood's conduct, including reliance on a baseless 'mortgage fraud' theory.

22. Despite the stay order and the Court's evident concern regarding Eastwood's conduct, on November 14, 2025, Eastwood filed an extraordinary 400-page Motion for Summary Judgment with 26 exhibits before discovery had even commenced, further demonstrating a pattern of retaliation, bad faith, and procedural abuse.

23. Eastwood's conduct stands in stark contrast to how it treated similarly situated white customers who posted negative reviews online. Those customers were not sued, not subjected to injunctions, and not pursued through bankruptcy litigation. This disparity serves as a central basis for the discrimination and retaliation claims brought herein.

## V. CAUSES OF ACTION

### COUNT 1 – Race Discrimination (42 U.S.C. §1981)

24. Eastwood and its representatives interfered with the Bryants' contractual rights on the basis of race, treated them differently from white customers, and engaged in conduct reflecting racially discriminatory intent.

### COUNT 2 – Retaliation (42 U.S.C. §1981)

25. Eastwood retaliated after the Bryants filed complaints with state agencies and the NAACP, engaging in litigation harassment, abusive discovery, and other retaliatory measures.

### COUNT 3 – FHA Race Discrimination (§3604)

26. Eastwood interfered with the Bryants' housing rights through discriminatory conduct and unfair treatment following the purchase of their home.

### COUNT 4 – FHA Retaliation (§3617)

27. Eastwood's actions were intended to punish the Bryants for filing civil rights complaints, constituting unlawful retaliation.

### COUNT 5 – Breach of Settlement Agreement

28. Eastwood violated the terms of the December 28, 2023 Agreement, including confidentiality obligations.

### COUNT 6 – Breach of Confidentiality

29. Eastwood intentionally disclosed private settlement terms and financial information.

### COUNT 7 – Fraud / Fraudulent Inducement

30. Eastwood entered the settlement without intent to honor its terms and misrepresented material facts.

### COUNT 8 – UDTPA

31. Eastwood's conduct constitutes unfair and deceptive trade practices under North Carolina law.

### COUNT 9 – Abuse of Process

32. Eastwood weaponized judicial processes, including TROs, contempt efforts, Rule 2004 misuse, and a premature MSJ.

### COUNT 10 – Violation of Discharge Injunction

33. Eastwood improperly attempted to collect discharged debts and retaliated after discharge.

### COUNT 11 – Sanctions (§105)
34. Eastwood acted in bad faith, warranting sanctions under §105.

### COUNT 12 – Declaratory Judgment – No Lien
35. The Confession of Judgment created no valid lien.

### COUNT 13 – Declaratory Judgment – Injunction Void
36. The injunction expired and was extinguished by dismissal with prejudice.

### COUNT 14 – IIED
37. Eastwood's conduct was extreme, outrageous, and caused severe emotional distress.

### COUNT 15 – Punitive Damages
38. Punitive damages are warranted due to willful, malicious, and reckless conduct.

## VI. DAMAGES

39. The Bryants seek compensatory damages of $750,000 to $1,500,000 for financial and personal harm.

40. Emotional distress damages of $250,000 to $750,000 are warranted given the severity of the misconduct.

41. Damages for confidentiality breaches total $250,000 to $1,000,000.

42. Under UDTPA, treble damages may reach $3,000,000.

43. Punitive damages up to $20,000,000 are justified based on the malicious and retaliatory nature of defendants' conduct.

## VII. PRAYER FOR RELIEF

44. Judgment in favor of the Bryants on all counts.

45. Compensatory, special, emotional, treble, and punitive damages.

46. Declaratory judgments as stated above.

47. Sanctions under §105.

48. Return or destruction of all improperly obtained documents.

49. Any further relief deemed just and proper.

## VIII. SIGNATURE

Respectfully submitted this 4th day of December 2025.

*/s/ James L. Bryant, Jr.*    */s/ Sharon R. Bryant*

James L. Bryant, Jr. and Sharon R. Bryant
Pro Se Litigants
5629 Siler St
Trinity, North Carolina 27370
Tel: (478) 256-8625
jlbryantjr11@gmail.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing *Plaintiffs' Counterclaims* was served on all creditors and parties in interest by CM/ECF and by U.S. Mail to the following:

Katie Wong
Brooks, Pierce, McClendon, Humphrey, & Leonard, LLP
150 Fayetteville Street, Suite 1700
Raleigh, NC 27601
P.O. Box 1800 (27602)
KWong@BrooksPierce.com
Phone: 919.882.2520

Clint Sheppard Morse
NC Bar No. 38384
cmorse@brookspierce.com

Jamey M. Lowdermilk
NC Bar No. 52271
jloudermilk@brookspierce.com
Brooks, Pierce, McClendon, Humphrey, & Leonard, LLP
230 North Elm Street, Suite 2000
Greensboro, NC. 27401
Phone: 336.271.3167

Vicki Parrot
Trustee

John Paul Hughes Cournoyer
Bankruptcy Administrator

Respectfully submitted this 4th day of December 2025.

James L. Bryant, Jr. and Sharon R. Bryant
Pro Se Litigants
5629 Siler St
Trinity, North Carolina 27370
Tel: (478) 256-8625
llbryantjr11@gmail.com